UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,<br><br>Plaintiff,<br><br>v.<br><br>CYBERSECURITY AND INFRASTRUCTURE SECURITY AGENCY<br><br>Defendant. | Civil Action No. 25-1765 (AHA) |

## DEFENDANT'S PRE-MOTION STATEMENT

Defendant, Cybersecurity and Infrastructure Security Agency, files this Pre-Motion Statement in accordance with the Court's Minute Order entered January 12, 2026. Plaintiff, Electronic Privacy Information Center, filed its Complaint on June 4, 2025. Compl. (ECF No. 1). Defendant filed its Answer on July 7, 2025. Ans. (ECF No. 8). Now, Defendant intends to move for summary judgment under Federal Rule of Civil Procedure ("Rule") 56, seeking a determination that the report at issue be withheld in full under Freedom of Information Act ("FOIA") Exemption 5. If the Court disagrees with withholding in full, then Defendants intend to seek partial withholding of certain redacted information pursuant to FOIA Exemptions 5, 6, and 7(E).

Plaintiff's claims concern a FOIA request seeking release of a 2022 report commissioned by the Defendant regarding communication infrastructure security. Compl. (ECF No. 1) at ¶ 17. Defendant is the Sector Risk Management Agency for the communications sector and the information technology sector, tasked with providing "specialized sector-specific expertise to critical infrastructure owners and operators." *See* 6 U.S.C. § 665d (outlining the responsibilities of Sector Risk Management Agencies). A contractor prepared the report for the Defendant,

purporting to identify specific threats to infrastructure in the communications sector, identify specific entities that are vulnerable to those threats, and making recommendations to mitigate those threats. The report refers to foreign actors, U.S. persons and non-U.S. persons by name, and purports to discuss specific threats and vulnerabilities to the U.S. telecommunications system that Defendant has not been able to independently verify or corroborate.

Defendant seeks to move for summary judgment and states as follows:

**FOIA**

Under FOIA, "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules[,] . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). If the records fall into one of nine statutorily created exemptions, however, the Government need not turn over the requested information. *Id*. § 552(b)(1)-(9). To show that an exemption applies and justifies the withholding of records, the Government "must provide a 'relatively detailed justification'" for its withholding, "specifically identifying the reasons why [the] exemption is relevant." *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (quoting *King v. Dep't of Just.*, 830 F.2d 210, 219 (D.C. Cir. 1987).

**WITHHOLDING IN FULL UNDER FOIA EXEMPTION 5**

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption shields documents of the type that would be privileged in the civil discovery context, including materials protected by the attorney-client privilege, the attorney work-product doctrine, and the deliberative-process privilege. *Nat'l Lab. Rels. Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Rockwell Int'l Corp. v. Dep't of Just.*, 235 F.3d 598, 602 (D.C. Cir. 2001).

Plaintiff's challenge the Defendant's withholding of report, in full, under Exemption 5. The government must consider whether it can segregate and disclose non-privileged factual information within a document. *Loving v. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008), *Elliott v. USDA*, 596 F.3d 842, 851 (D.C. Cir. 2010) (quoting *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007). CISA has conducted this segregability analysis and determined that the report merits withholding in full.

The deliberative process privilege protects intra- or inter-agency documents that are "both predecisional and deliberative." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021); *accord Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). "A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Petrol. Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). Moreover, a record is pre-decisional if it was "generated before the agency's final decision on the matter." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021). And a record is deliberative when it is "prepared to help the agency formulate its position." *Id.* "Material is also deliberative if it 'reflects the give-and-take of the consultative process.'" *Id.*

"Examples of predecisional documents include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" *Cleveland v. United States*, 128 F. Supp. 3d 284, 298-99 (D.D.C. 2015) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

"Assessing whether a record is pre-decisional or deliberative necessarily requires identifying the decision (and the associated decisional process) to which the record

pertains." *Citizens for Resp. & Ethics in Wash. (CREW) v. U.S. Dep't of Just.*, 45 F.4th 963, 972 (D.C. Cir. 2022). The agency asserting the privilege must "establish what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Senate of Puerto Rico ex rel. Judiciary Comm. v. DOJ*, 823 F.2d 574, 585-86 (D.C. Cir. 1987) (internal quotation marks and citation omitted). Put differently, the agency "bears the burden of establishing the character of the decision, the deliberative process involved, and the role played by the documents in the course of that process." *Paisley v. CIA*, 712 F.2d 686, 698 (D.C. Cir. 1983), *vacated in part on other grounds*, 724 F.2d 201 (D.C. Cir. 1984); *Energy Pol'y Advocs. v. SEC*, Civ. A. No. 22-1312 (APM), 2025 U.S. Dist. LEXIS 56244, *2-3 (D.D.C. Mar. 26, 2025).

The deliberative process privilege protects "materials that would reveal 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966), *aff'd*, 384 F.2d 979 (D.C. Cir. 1967)). This privilege rests "on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. at 8-9; *accord Jud. Watch, Inc. v. Dep't of Just.*, 20 F.4th 49, 54 (D.C. Cir. 2021). The "ultimate aim" of the deliberative process privilege set forth in Exemption 5 is to "prevent injury to the quality of agency decisions." *Petrol. Info.*, 976 F.2d at 1433-34 (internal quotation marks omitted). "There should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take—of the deliberative process—by which the decision itself is made'" because the agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality

of agency decisions.'" *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Sears*, 421 U.S. at 151).

The report at issue is being withheld pursuant to Exemption 5 (b)(5) in full.  5 U.S.C. § 552(b)(5). Defendant commissioned a contractor to perform a study to inform Defendant's ongoing analysis involving potential vulnerabilities in the communications infrastructure; to evaluate the probabilities of, and impacts associated with, those potential vulnerabilities; and to develop potential solutions.  The subject report, completed in June 2022, is the result of that study. Upon review of the report, Defendant determined that it did not have sufficient information to take or recommend any specific actions outlined in the subject report, given that it makes technical claims without presenting the supporting information necessary to verify the claims, and makes unsupported claims against named and unnamed United States and non-United States companies. Defendant did not make decisions based on information, analyses, or recommendations contained in the report.  Defendant did not publish the report; take steps to adopt or endorse the report; share the report with its state or local partners, or private sector stakeholders; issue advisories concerning the contents of the report; or otherwise take action based upon the contents of the report.  Defendant did not operationalize the report; it was only used by Defendant in a deliberative and pre-decisional manner. Accordingly, Defendant is withholding the report in full pursuant to FOIA Exemption 5.

### WITHHOLDING IN PART UNDER FOIA EXEMPTION 7(E)

Subpart (E) of Exemption 7 permits withholding if production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). To properly invoke Exemption 7(E), the agency must satisfy two requirements: it must show first that the record was compiled for law-

enforcement purposes and second that the production would disclose either techniques and procedures for law-enforcement investigations or guidelines for law-enforcement investigations that would risk circumvention of the law. *Gun Owners of Am. v. FBI*, Civ. A. No. 22-3379 (JEB), 2024 WL 195829, at *2 (D.D.C. Jan. 18, 2024).

Defendant commissioned the study and resultant report for the purpose of examining threats and vulnerabilities to the communications sector, in Defendant's capacity both as the Sector Risk Management Agency for the communications and the information technology sectors, tasked with providing "specialized sector-specific expertise to critical infrastructure owners and operators," 6 U.S.C. § 665d (outlining the responsibilities of Sector Risk Management Agencies), and as a coordinating agency tasked with promoting critical infrastructure security under the Homeland Security Act of 2002, *see* 6 U.S.C. § 652 (outlining Defendant's statutory homeland security mission).

Portions of the report contain information revealing Defendant's techniques, procedures, and guidelines revealing how and whether it conducts investigations. Such homeland security related information requires protection so as not to reveal Defendant's internal consideration and analyses of critical infrastructure security procedures. Release of such information would risk circumvention of the law in that wrongdoers could use the information contained therein to harm the nation's critical infrastructure. Furthermore, release of information regarding the identities of foreign countries or companies that were the subject of the report could inform such entities that derogatory information was uncovered by the study and such information could enable these entities to take actions to obscure their activities in the future.

**WITHHOLDING IN PART UNDER FOIA EXEMPTION 6**

Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). It "requires a court to 'pursue two lines of inquiry,' first determining whether the records at issues are personnel, medical, or similar files, and then determining whether their disclosure would 'constitute a clearly unwarranted invasion of personal privacy,' which requires balancing 'the privacy interest that would be compromised by disclosure against any public interest in the requested information.'" *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008). "The term 'similar files' is to be construed broadly and includes any 'disclosure of information which applies to a particular individual.*" Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982). Exemption 6 has been interpreted broadly to protect "bits of personal information, such as names and addresses." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015). "The information in the file 'need not be intimate' for the file to satisfy the standard, and the threshold for determining whether information applies to a particular individual is minimal." *Milton v. Dep't of Just.*, 783 F. Supp. 2d 55, 58 (D.D.C. 2011) (quoting *N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990)).

If the threshold requirement of "personnel and medical files and similar files" is met, the Court must weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999). If a requesting party cannot demonstrate a public interest in disclosure, then the court will not order disclosure, because "something, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989). Thus, "unless a

FOIA request advances 'the citizens' right to be informed about what their government is up to,' no relevant public interest is at issue." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 34 (D.C. Cir. 2002) (quoting *Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)). Absent a public interest of the sort FOIA was intended to serve, the Court's inquiry ends, and the exemption must be upheld. *Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Hum. Servs.*, 554 F.3d 1046, 1056 (D.C. Cir. 2009) ("[W]e need not balance the non-existent public interest against every physician's substantial privacy interest in the Medicare payments he receives.").

The subject report contains the names of individuals associated with foreign and domestic companies operating within the communications infrastructure. Defendant has determined their privacy interests outweigh the public interest in the release of their names, and, therefore, the withholding of those names under Exemption 6 is appropriate.

For the foregoing reasons, Defendant intends to move for summary judgment and requests that the Court schedule a pre-motion conference.

Dated: February 13, 2026
       Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:     */s/ Zachary J. Krizel*
    ZACHARY J. KRIZEL
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2518
    Zachary.Krizel@usdoj.gov

*Attorneys for the United States of America*